ALBERT CAPALDO *vs.* PUBLIC UTILITY HEARING BOARD.

AUGUST 4, 1950.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This case is before us on the appeal of Albert Capaldo, hereinafter called the applicant, from a decision of the public utility hearing board denying his amended application for a certificate of public convenience and necessity to permit him to operate five taxicabs for transportation of passengers within the city of Providence.

The proceeding was commenced by an application filed, under general laws 1938, chapter 100, as amended, in the office of the public utility administrator, hereinafter called the administrator, for a certificate of public convenience and necessity to operate three taxicabs within the city of Providence. Monahan Taxicab Company, hereinafter referred to as Monahan, and Yellow Cab Company, at that time operators of taxicabs in this city, appeared in opposition thereto. After hearing evidence for and against the application it was denied by the administrator. An appeal therefrom was taken by the applicant in accordance with public laws 1940, chap. 821, sec. 1, to the public utility hearing board, hereinafter called the board, where the matter was heard *de novo*.

Pending that appeal Yellow Cab Company and Monahan, the original protestants, legally sold and assigned all their assets, including their taxicabs and certificates of convenience and necessity, to a new corporation, namely Yellow Cab Company of Providence, hereinafter sometimes referred to as the protestant. The latter took over and continued to operate all the taxicabs formerly belonging to the two companies which thus had been absorbed. The new company then moved to intervene as a party protestant at the hearing before the board and its motion was granted over objection by the applicant. The board also granted without objection the applicant's motion to amend his

application so as to request five certificates in place of three as originally sought.

At this hearing a transcript of evidence taken before the administrator was admitted in evidence over the applicant's objection. Further evidence was introduced by both applicant and protestant through witnesses, and at the conclusion of the hearing a written decision was filed by the board denying the application. From that decision the applicant has duly prosecuted to this court the instant appeal under the above-mentioned statute.

Much of the evidence related to the background of the applicant's experience in operating public service cars, which are not under regulation by the administrator as are taxicabs. In general such cars are used for transportation of passengers only from fixed locations on private property or on specific call without indiscriminate solicitation. For the distinction between a public service car and a taxicab, hereinafter sometimes referred to as cab, see *Broadway Auto Livery* v. *State Board of Public Roads,* 52 R. I. 109. There was also evidence concerning the applicant's difficulties with the attitude of police officials and insurance agents or companies; but admittedly neither his registration nor hackney license had ever been denied or revoked and apparently the liability insurance coverage on his public service cars has continued in force.

On the primary issue of whether public necessity exists for more taxicabs the evidence for the application was presented by the applicant himself, one of his present drivers and another former driver, a restaurant proprietor, and a driver who had been previously employed by a competing operator. This evidence in general tends to show that there is a present need for more taxicabs; that unreasonable delays, aggravated in peak periods and in bad weather, are regular occurrences for passengers at the Union Station, Sheraton-Biltmore Hotel and Rhode Island Hospital; that similar delays occur at other locations including the homes of people trying to obtain taxicab service

at certain times and under various conditions; and that people who are unable to get a cab in traffic repeatedly open the doors of public service cars of applicant and others without solicitation and demand transportation.

In addition the applicant's attorney read into the record portions of the transcript of evidence taken at the hearing before the administrator and also the decision of the board on December 23, 1946 granting fifty certificates of convenience and necessity on the application of City Cab Company, Majestic Cab Co., and William Mambro d.b.a. Mount Pleasant Cabs, which associated companies hereinafter will be referred to for convenience as City Cab. The board also read into the record the opinion of this court in *Yellow Cab Co.* v. *Public Utility Hearing Board,* 73 R. I. 217, in which the above-described decision in the City Cab case was approved.

On the other hand the protestant in addition to the transcript of evidence taken before the administrator offered further testimony through its manager, one of its starters, its night superintendent, a deputy registrar of motor vehicles, certain police officers who supervised hackney licenses, officers of Silver Top Taxi Association, hereinafter referred to as the independents, and persons associated with City Cab. This testimony conflicts with that of the applicant and his witnesses concerning alleged unreasonable delays and conditions prevailing at the Union Station, Sheraton-Biltmore Hotel and Rhode Island Hospital under various conditions, and explained the service being rendered at these and other locations during normal conditions, at peak periods, and in stormy weather. According to the testimony of certain of these witnesses the public demand for cab service had substantially decreased over that of 1946 and 1947, whereas one stated in effect that it was about the same. However, all of them apparently agreed that service now was better than in 1946 and 1947 and was entirely adequate.

The board in its decision did not review the testimony of the witnesses in detail but pointed out that there was a

square conflict in the evidence as to the primary issue, namely, whether a public necessity existed for more taxicabs in the city of Providence. Briefly summarized it referred to the applicable law governing cases of this type in which the primary test of public service and welfare is distinguished from other secondary considerations, noted and discussed the applicant's principal arguments, observed that he was not a convincing witness, and indicated the chief reasons which led it to the conclusion that present operators of cabs are adequately serving the existing public need; that no necessity for more cabs had been demonstrated; and that satisfactory service in the immediate future seemed to be assured by the proposed operation of more cabs by both protestant and City Cab.

The applicant asserts by his reasons of appeal: "1. That the decision is unlawful and unreasonable in that public convenience and necessity require the granting of the petitioner's application for a certificate of public necessity and convenience to operate five taxicabs in the City of Providence, Rhode Island. 2. That the said decision is unreasonable because it is not justified by the evidence presented before said Hearing Board relative to said application."

In support thereof he first contends that the evidence of his witnesses is undisputed and shows conclusively the existence of public necessity as measured by the true test, namely, public service and welfare as laid down in *Capaldo* v. *Public Utility Hearing Board,* 70 R. I. 356. In answer thereto the board in its decision found that the evidence on the primary issue of public necessity and service was not undisputed, as applicant contended, but was conflicting. In our opinion an examination of the record as a whole supports the board's conclusion in this respect.

The applicant next argues that the board was bound to notice its prior decision of December 1946 wherein it granted fifty certificates of necessity to City Cab, and that such decision in the light of subsequent evidence was con-

clusively binding on the board as to the present existence of public necessity for more cabs. We do not agree fully with this contention. In our judgment the decision of the board as to the existence of public necessity for cabs rendered in one case at a much earlier date on certain evidence therein presented is not *conclusive* on the question whether such public necessity exists in another case at a much later time and on different evidence. However, we feel that such decision was nevertheless relevant evidence and, together with the other pertinent facts, was entitled to be considered and properly weighed by the board in determining whether a public need for more taxicabs presently existed.

In the instant case the board, expressing some doubt as to the validity of applicant's claim concerning the evidentiary value of the decision in the City Cab case, nevertheless assumed that such decision, at least in its implications, should be considered and given some weight on the issues. It then proceeded to show by an analysis of the evidence in the instant case that such prior decision, if properly set into present conditions, did not warrant the applicant's deduction to the effect that at least a portion of the public need found in the City Cab case has never been satisfied.

Such analysis points out expressly that in December 1946 the total number of taxicabs in operation in the city of Providence was 116, of which 101 belonged to Yellow Cab Company, 5 to Monahan, and 10 to the independents. It further states that presently there are 142 taxicabs operating in the same area, of which 119 belong to protestant, 11 to the independents, and 12 to City Cab, thus making an additional 26 taxicabs now operating. The board then goes on to say that this is not the whole picture since, according to certain evidence in the instant case given by a representative of the protestant, Yellow Cab Company was doing well in December 1946 if it could keep 70 to 75 cabs in operation because at that time its cabs were old,

greatly in need of constant repair, and could not be replaced because of shortages during the war; and that a similar condition was true of cabs belonging to Monahan. Therefore the board concludes that according to such analysis the improved condition of Yellow Cab Company's service "in and of itself, goes a long distance toward supplying the need of 50 taxicabs," which was found to exist at the date of its prior decision in the City Cab case. To that increase it adds the 12 taxicabs now in operation by City Cab under the fifty certificates granted in December 1946 and thus concludes that the applicant derived little comfort from his argument to the effect that the board's previous decision in the light of subsequent events shows there is still a deficiency of at least 24 taxicabs.

In our opinion we would have difficulty in concluding that the board's decision generally on all the evidence is clearly wrong if it is entitled to use certain evidence of the protestant herein as the substantial basis for the decision which it had filed in the City Cab case in December 1946. Clearly the board's present analysis and use of such evidence as a basis for or clarification of such prior decision materially affected its consideration and decision of the instant case. However, in our opinion it indicates that the board either permitted the protestant to go back of the prior decision and to supply by this retroactive evidence a different basis therefor from the reasons which were stated and relied on by the board at that time, or it at least indicates that the board misconceived the weight to be given its prior decision as approved by this court.

In other words, we do not find in the board's prior decision granting fifty certificates of convenience to City Cab as of December 1946 any reference whatever to the fact that Yellow Cab Company at that time for any reason was serving the public by operating *only* 70 or 75 cabs. Nor do we find therein that the board's decision at that time was based in whole or part on a consideration of such operating conditions within Yellow Cab Company as are

now alleged by the protestant to have existed at that time. On the contrary only five references appear in that decision relating to the number of cabs registered and in operation as of that date, and none of such references expressly or impliedly supports the board's present analysis and reasoning as a material basis for that decision.

These references appear as follows: 1. A finding that Yellow Cab Company has since 1930 been the holder of certificates to operate 278 cabs in the cities of Providence and Cranston, although at no time within that period had it ever had registered more than 101 cabs, the exact number registered at the time the hearings were concluded being 100. 2. A finding that Monahan at the time was operating five cabs under the same number of certificates and that the independents then held certificates for and were operating 11 cabs. 3. A finding to the effect that if 50 additional cabs were operated in the city of Providence, in accordance with their decision, the total cabs in operation would be 167, or about one cab per 1515 persons in Providence and one cab to 1798 people if the populations of Providence and Cranston are combined, thus comparing favorably with expert and statistical testimony of experiences in several other cities of similar population. 4. A reference to the fact that there were 200 public service cars licensed in the city of Providence which under existing statutes were helping to serve the public demands for transportation although it found the extent thereof was not shown. 5. A statement, in dealing with the weight to be given the protestant's plea that if necessity is found an opportunity should be given to it to put more cabs in service before certificates are issued to other persons, wherein the board said: "It must, however, face the fact that the Yellow Cab Co. has for sixteen years had certificates for 278 taxicabs and has therefore had ample opportunity to increase its service in a field where presumably it has more acquaintance with the existing needs than anyone else would have."

Thus we can find in the board's decision of December 1946 no reference whatever indicating expressly or by implication that the granting of fifty certificates of convenience and necessity to City Cab depended in any way on a consideration of the alleged fact that only 70 to 75 cabs were in operation by Yellow Cab Company at that time. On the other hand the decision of the board in the City Cab case discusses the evidence and states several observations and valid reasons answering protestant's argument and supporting the conclusion that there was a public need for 50 more taxicabs at that time, but none of them is based upon the analysis found in the instant decision.

In the case of *Yellow Cab Co.* v. *Public Utility Hearing Board, supra,* we approved the board's decision as written in the City Cab case and we expressly stated that the cabs registered and in use at that time by Yellow Cab Company appeared to be 101, not 70 or 75 as now asserted. When the board's decision in the City Cab case as actually made is considered with our approval of it, there appears to be no room to permit evidence of an interested party protestant in the instant proceeding to go back of that decision and opinion and by present retroactive evidence to substitute in effect a different basis or reason therefor, at least unless something in the board's prior decision or in this court's opinion based thereon reasonably gives a foundation for proper clarification or elaboration.

In any event even if it be proper to consider such evidence on the issue of conditions as they were found to exist in December 1946, we think that the decision of the board at that time, if clear and approved by this court, must be given greater weight than subsequent evidence which purports to supply retroactively a different basis or reason from that recited in the decision. While it is true that the evidence of alleged operating conditions within Yellow Cab Company at that time does appear in the evidence in the instant case yet it comes from an interested protestant, relates back to something in its peculiar control which

is not now easily ascertainable by others, and in effect conflicts with the board's decision as approved by this court. Nevertheless such evidence is accorded great weight in the instant decision. In our judgment the board used the present evidence retroactively as a basis for its decision respecting the conditions in 1946, or at least it gave such evidence much greater weight throughout its present decision than was given to its prior decision as actually rendered, which we had approved. This was error.

In the circumstances, therefore, the board's decision as then made and approved rather than a protestant's present purported explanation of or substitution for it should have been the guide or reference point as to conditions existing in December 1946. If that decision is considered in its proper light, it clearly justifies the premise of the applicant that the board had found as of December 1946 a public need for a total of *167* cabs. The board expressly so decided. The question then was whether the evidence of present conditions showed that such public necessity had increased, decreased, or remained about the same, and whether the public service and welfare was being adequately satisfied by the 142 cabs presently in operation.

The evidence on that issue is conflicting. In reaching its conclusion the board indicated that the applicant's pertinent testimony was not convincing, especially since his opinion as to the necessity for more cabs appeared to be based in part on his conclusion that "the need is present only if public service cars are eliminated." While such a deduction may be possible from certain answers of the applicant, who also stated in substance that in his opinion all cars used for public transportation of passengers should be cabs under regulation by the administrator, a consideration of all his testimony in our opinion shows that his conclusion as to the present need for more cabs was based not so much on that view as on expressed observations and experiences of himself and his witnesses in connection with the service being demanded by the public and not

being adequately and reasonably supplied by cabs now in operation.

The board also concluded that the opinion evidence for the protestant appeared to be buttressed by facts so as to be more convincing than that for the applicant. However, apart from the analysis of the evidence as to Yellow Cab Company's operating condition in 1946, the board apparently overlooked or at least did not discuss the seeming inconsistencies in the pertinent evidence of protestant's witnesses on the primary issue. For example, the board stated that it was impressed by the testimony of a representative of the protestant to the effect that the public demand for cabs was considerably less in 1948 than in 1946 and 1947. Notwithstanding general statements as to substantial decreases in public demand the same witness testified to the effect that in that period Yellow Cab Company had registered and put into operation additional cabs, thereby increasing its present fleet to 119 as against 101 in 1946; and that on the average at least 10 more cabs were being operated daily in January 1948 than were operated in January 1947. It was also testified that Yellow Cab Company already had ordered six more cabs to bring its fleet to 125. Such statements as to decreased public demand are not reasonably consistent with the company's conduct in increasing the number of its cabs in that period and in our judgment requires some explanation to be convincing. No such explanation appears in evidence or in the board's decision.

Similarly other witnesses for protestant, as the representative of City Cab, testified to the effect that the public demand for cabs was about the same in 1947 and 1948. This contradicts the pertinent testimony of certain other witnesses for Yellow Cab Company. Moreover the same witness clearly stated that City Cab intended to put on 38 more cabs as soon as meters and equipment could be obtained. This conduct tends to detract greatly from, if it does not actually contradict, the testimony for Yellow Cab

Company that there has been a substantial *decrease* in public demand. At least it does not leave the expert testimony for the protestant as convincing on this issue as apparently the board found it to be. It rather tends to corroborate other testimony by and for the applicant to the effect that the demand was about the same in 1948 as in 1947 and was not yet reasonably satisfied.

The board adverted also to certain matters which it recognized as of secondary importance stating, however, they should be used with some reservation. Among these the board noted that although the protestant had provided substantially a 50 per cent increase in available cabs over its predecessor yet actual transportation had increased only about 17 per cent, thus indicating that the demand existing in 1946 and 1947 was being far better satisfied. It also observed that adequate service in the immediate future seemed assured by the additional cabs now proposed by the protestant and City Cab. The board apparently gave these considerations weight at least as buttressing the conclusion that "the demands of the public for taxicab service are being far better satisfied now than at the date of the previous opinion." In making this conclusion we think the board continued its original error by adopting 70 to 75 as the number of cabs available for operation by Yellow Cab Company in December 1946 whereas its decision in that case, as well as our opinion, stated there were 101 cabs registered and in use at that time. Obviously if the prior decision is used as the basis, there is not a 50 per cent increase in available cabs and service by protestant, as the board states in its discussion as to the degree to which the service has improved. Moreover the primary issue is not whether the demand is being better served than in December 1946 but whether public service is now reasonably adequate.

Unless we give undue weight to the evidence in this case as to the number of cabs being operated in December 1946 and also ignore the inconsistencies in certain evidence for

the protestant, we are of the opinion that the weight of the evidence clearly supports the conclusion that there is a present need for more operating cabs and more service to the public in Providence; and that the demand found to have existed in December 1946 for 167 cabs has not decreased to the extent that it is being reasonably satisfied by the cabs now actually serving the public, even if we add thereto the six cabs which appear to have been ordered by the protestant. In view of this conclusion it is unnecessary to consider the applicant's other reasons of appeal.

The applicant's appeal is sustained, the order appealed from is reversed, and the papers in the case are hereby sent back to the respondent board with direction that an order be entered granting the amended application.

*William Gerstenblatt,* for applicant.

*William E. Powers,* Attorney General, *Robert A. Coogan,* Assistant Attorney General, for State of Rhode Island and respondent board.

*Raymond F. Henderson,* for Yellow Cab Company of Providence.